**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Criminal Case No. 09-cr-00172-CMA

UNITED STATES OF AMERICA,

     Plaintiff,

v.

BARNEY ANTHONY TRUJILLO,

     Defendant.

---

### ORDER GRANTING DEFENDANT'S MOTION TO VACATE
---

This matter comes before the Court on Defendant Barney Anthony Trujillo's

Motion to Vacate pursuant to 28 U.S.C. § 2255 (Doc. # 28).  For the following reasons,

the Court grants the motion.

## I.      BACKGROUND

### A.  MR. TRUJILLO'S PREVIOUS CONVICTION

On July 7, 2009, Mr. Trujillo pled guilty to one count of bank robbery in violation

of 18 U.S.C. § 2113(a).  (Doc. ## 23, 24.)  Before sentencing, the U.S. Probation Office

filed a Presentence Investigation Report (PSR) recommending that Mr. Trujillo be

sentenced as a career offender pursuant to § 4B1.1(a) of the United States Sentencing

Guidelines (Guidelines), which applies when "the defendant has at least two prior felony

convictions of either a crime of violence or a controlled substance offense."  Section

4B1.2(a) defines a crime of violence as:

1

> > (a) any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> > (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

*Id.* (emphasis added).[1]  The italicized phrase is commonly known as the residual clause.

The PSR stated that Mr. Trujillo had at least two prior aggravated robbery convictions in Colorado that qualified as crimes of violence under § 4B1.2(a).  These convictions increased Mr. Trujillo's total offense level from a level 21, with an advisory imprisonment range of 77 and 96 months, to a level 29, with an advisory imprisonment range of 151 to 188 months.  The Court adopted the findings of fact and the guideline recommendations in the PSR, but the Court then departed from the Guideline range to impose a downward variance pursuant to 18 U.S.C. § 3553, resulting in a 120-month sentence.  (Doc. ## 24, 26.)  Mr. Trujillo did not directly appeal that sentence, and it became final on or about October 29, 2009.  *See* Fed. R. App. P. 4(b)(1)(A)(i) (defendant must file a notice of appeal within fourteen days of judgment); *United States v. Prows*, 448 F.3d 1223, 1227–28 (10th Cir. 2006) ("If the defendant does not file an appeal, the criminal conviction becomes final upon the expiration of the time in which to take a direct criminal appeal.").

---

[1] This section has since been amended, but Guidelines ranges are calculated according to the Guidelines in effect at the time the defendant is sentenced.  *See* U.S.S.G. § 1B1.11.

## B. *JOHNSON* AND *WELCH*

Approximately six years later, on June 26, 2015, the Supreme Court decided *Johnson v. United States*, --- U.S. ---, 135 S. Ct. 2551 (2015).  *Johnson* examined the Armed Career Criminal Act (ACCA), which mandates a 15-year minimum sentence for anyone convicted of felon-in-possession who "has three previous convictions . . . for a violent felony."  18 U.S.C. § 924(e)(1).  Specifically at issue in *Johnson* was the constitutionality of the residual clause contained in the ACCA's definition of "violent felony"—a clause that is identical to the residual clause in § 4B1.2(a)(2) of the Guidelines:

> any crime punishable by imprisonment for a term exceeding one year . . . if committed by an adult, that—
>
> (i)   has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)  is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

§ 924(e)(2)(B) (emphasis added).

The italicized phrase in clause (ii) is the "residual clause," and clause (i) is known as the "elements" or "force" clause.  The *Johnson* Court held that the residual clause was unconstitutionally vague because the application of it "denies fair notice to defendants and invites arbitrary enforcement by judges.  Increasing a defendant's sentence under the clause denies due process of law."  *Id.* at 2557.

On April 18, 2016, the Supreme Court decided *Welch v. United States*, --- U.S. ---, 136 S. Ct. 1257 (2016).  *Welch* held that *Johnson* announced a "substantive" change

3

in the criminal law that applies retroactively to prisoners who received the ACCA

mandatory minimum sentence based on an offense that was deemed a "violent felony"

under the residual clause.  *Id.* at 1265.  Thus, via 28 U.S.C. § 2255, those prisoners

could collaterally challenge their sentences as unconstitutional.

### C.  MR. TRUJILLO'S § 2255 MOTION

On June 13, 2016, Mr. Trujillo filed the instant motion, arguing that his sentence

enhancement under § 4B1.2(a) of the Guidelines is unconstitutional in light of *Johnson*.

Mr. Trujillo contends that his previous convictions for aggravated robbery can only

constitute crimes of violence under the residual clause of § 4B1.2(a)(2), which is

identical to the unconstitutional residual clause of the ACCA.  He asks that his sentence

therefore be vacated and a resentencing hearing be held.

On August 25, 2016, the Government responded to the motion, contending that it

was untimely filed and procedurally barred.  The Government also contends that Mr.

Trujillo's previous convictions for aggravated robbery constitute crimes of violence

under the force clause of § 4B1.2(a)(1), not the residual clause of § 4B1.2(a)(2).

Therefore, his previous convictions remain crimes of violence regardless of *Johnson*

and his sentence should remain as originally imposed.

## II.    ANALYSIS

### A.  TIMELINESS

The Government first argues that Defendant's § 2255 motion is untimely.

Ordinarily, a § 2255 motion must be brought within a year of either (1) the date in

which the defendant's judgment of conviction becomes final, 28 U.S.C. § 2255(f)(1); or

(2) the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review, 28 U.S.C. § 2255(f)(3).

Mr. Trujillo does not dispute that his motion was untimely filed under § 2255(f)(1). As mentioned, Mr. Trujillo's conviction became final on or about October 29, 2009, almost seven years before he filed this § 2255 motion.  Mr. Trujillo, however, contends that his motion is timely under § 2255(f)(3) because he filed it within one year of *Johnson*, which recognized a new right held retroactively available in *Welch*.

It is undisputed that *Johnson* announced a new right.  *Welch*, 136 S.Ct. at 1264. The Supreme Court has not addressed, however, the scope of this new right— specifically whether *Johnson's* constitutional holding is limited to § 924(e)(2)(B) of the ACCA; or whether it extends to render the identical residual clause in § 4B1.2(a)(2) of the Guidelines unconstitutional, and if so, whether that extension applies retroactively. *See Beckles v. United States*, No. 15-8544, --- U.S.---, 136 S. Ct. 2510 2016 WL 1029080 (U.S. Jun. 27, 2016) (certiorari petition granted on these issues).

The Government contends that (1) *Johnson* is limited to ACCA cases and does not extend to the residual clause in § 4B1.2(a)(2), and (2) even if *Johnson* did render § 4B1.2(a)(2) unconstitutional, that rule would only apply prospectively, not retroactively.

Mr. Trujillo takes essentially the opposite position.  He claims that *Johnson's* constitutional holding is based on an inherent flaw in *the language* used in the ACCA's residual clause, not in the residual clause as found in the ACCA specifically.  Thus, *Johnson* established that *that language* is unconstitutionally vague—a rule that necessarily extends to any other instance of that same language, including in the

residual clause of § 4B1.2(a)(2).  Mr. Trujillo likewise argues that, pursuant to *Welch*, *Johnson* is retroactive for all purposes, including as applied to § 4B1.2(a)(2).

The Court finds that Mr. Trujillo has the better argument.

*Johnson* focused on basic problems inherent in language that § 924(c)(3)(B) of the ACCA and § 4B1.2(a)(2) of the Guidelines share—language defining a crime of violence as one that "involves conduct that presents a serious potential risk of physical injury to another."  *See United States v. Madrid*, 805 F.3d 1204, 1210–11 (10th Cir. 2015) ("The concerns about judicial inconsistency that motivated the court in *Johnson*" are unchanged as applied to the Guidelines, § 4B1.2(a)(2)).  The Court determined that problems arise from the interaction of the categorical approach with that language. *Johnson*, 135 S. Ct. at 2557–58; *see United States v. Wise*, 597 F.3d 1141, 1144 (10th Cir. 2010) (courts use the categorical approach in applying § 4B1.2(a)).  Applying the categorical approach to the residual clause leaves "grave uncertainty about how to estimate the risk posed by a crime" and improperly applies an "imprecise serious potential risk standard" to a "judge-imagined abstraction."  *Johnson*, 135 S. Ct. at 2557–58 (internal quotation marks omitted).  Thus, "[i]ncreasing a defendant's sentence based on the vague language used in a "[residual] clause denies due process of the law."  *Id.*

The *Welch* Court reiterated this concern: "The residual clause failed . . . because applying [the serious potential risk] standard under the categorical approach required courts to assess the hypothetical risk posed by an abstract version of the offense."  136 S. Ct. at 1263.  Invoking this "shapeless provision" to extend someone's prison term "does not comport with the Constitution's guarantee of due process," *id.* (quoting

6

*Johnson*, 135 S. Ct. at 2560), and striking it down changed the substantive reach of the clause, "altering the range of conduct of the class of persons that the [ACCA] punishes." *Id*. at 1265 (quoting *Schiro*, 542 U.S. at 353).

Accordingly, logic dictates that *Johnson* announced a new rule with respect to *the language* used in the residual clause, not only as it appears in the ACCA but also as it appears in other contexts, including § 4B1.2(a)(2).

The Tenth Circuit decision in *Madrid*, 805 F.3d at 1210, supports this conclusion.[2]  The Tenth Circuit determined that *Johnson's* new constitutional holding applies to the residual clause of § 4B1.2(a)(2) of the Guidelines because it is "virtually identical" to § 924(e)(2)(B) of the ACCA and implicates "the same concerns about judicial inconsistency that motivated the Court in *Johnson*."  The panel then concluded that, following *Johnson*, § 4B1.2(a)(2) is unconstitutionally vague.  *Id.* ("If one iteration of the clause is unconstitutionally vague, so too is the other.").  Other courts have agreed. *See In re Hubbard*, No. 15–276, 185 F.3d 225, 229–35, 2016 WL 3181417, at *3–6 (4th Cir. Jun. 8, 2016); *United States v. Taylor*, 803 F.3d 931, 933 (8th Cir. 2015); *United States v. Townsend*, 638 Fed.Appx. 172, 178 n. 14 (3d Cir. 2015) (unpublished); *U.S. v. Durante*, --- F.Supp.3d ---, 2016 WL 5791199 (2016).

The Court is also informed by the Tenth Circuit's more recent decision in *Golicov v. Lynch*, 837 F.3d 1065 (10th Cir. 2016), holding that *Johnson* extends to render

---

[2] The Government argues that the Tenth Circuit's extension of *Johnson* in *Madrid* cannot apply to this Court's timeliness analysis because "only the Supreme Court [can] extend *Johnson* to USSG § 4B1.2."  (Doc. # 32 at 3.); *see E.J.R.W. v. United States*, 453 F.3d 1094, 1098 (8th Cir. 2006) (decisions from courts of appeals cannot trigger § 2255(f)(3)).  This Court, however, relies on *Johnson* in conducting its analysis and only mentions *Madrid* as persuasive authority supporting the Court's conclusion.

unconstitutional the definition of "crime of violence" applicable in deportation proceedings under the Immigration and Nationality Act (INA).  *Id.* at 1067–68.  The definition at issue was similar, but not identical, to the residual clause language found in the ACCA and the Guidelines.  *See Golicov*, 837 F.3d at 1067 (a "crime of violence" is defined in 18 U.S.C. § 16 to include: "(b) *any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense*.") (emphasis added).  Nevertheless, *Golicov* concluded that the *Johnson* rule applied to the definition of crime of violence in § 16(b) because it is "not meaningfully distinguishable from the ACCA's residual clause":

> [S]imilar to the ACCA's residual clause, § 16(b) "requires courts to use a [two-step] framework known as the categorical approach when deciding whether" a prior conviction constitutes a crime of violence.  *See Johnson*, 135 S.Ct. at 2557.  Under the first step of this framework, a reviewing court must "picture the kind of conduct that the crime involves in 'the ordinary case.'"  *Id.* Under the second step, a reviewing court must "judge whether that abstraction," i.e., the "ordinary case," falls within the standard outlined by the statute.  *Id.*  As was the case with the ACCA's residual clause, it is the combination of these two steps that "conspire to make [§ 16(b)] unconstitutionally vague.  *Id.*

*Golicov*, 837 F.3d at 1072; *see Shuti v. Lynch*, 828 F.3d 440, 446 (6th Cir. 2016) ("[T]he categorical approach has historically been used to determine whether a state conviction renders an alien removable under the immigration statute.") (internal quotation marks omitted).  Although the issue in *Golicov* is immaterial to the instant appeal, it supports our conclusion that *Johnson's* holding is not narrowly confined to the ACCA.

Moreover, as Tenth Circuit noted in *Golicov*, there exists an "insidious comingling" of the ACCA, INA, and Guidelines precedents, without regard to the textual or contextual differences between the various crime of violence provisions. *See e.g.*, *United States v. Wray*, 776 F.3d 1182, 1184–85 (10th Cir. 2015) ("[T]his court and other federal courts of appeals have applied the Supreme Court's ACCA violent felony analysis in cases interpreting § 4B1.2's definition of crime of violence.")(internal quotation marks omitted). This co-mingling further corroborates this Court's view that the constitutional right recognized in *Johnson* applies equally to defendants whose sentences were increased under the ACCA's residual clause and to those whose sentences were increased by operation of identical language in the Guidelines.

In light of this analysis, the Court also rejects the Government's contention that the application of *Johnson* to the Guidelines is procedural and not retroactively available on collateral review. The *Welch* Court unequivocally (and broadly) concluded "*Johnson* is a substantive decision and so has retroactive effect under *Teague* in cases on collateral review." 136 S. Ct. at 1265. The Government has cited no legal authority to support the proposition that a rule can be substantive in one context (as applied to the ACCA) but procedural in another (as applied to the Guidelines) and this Court sees no logical basis for so concluding here. *cf. Danforth v. Minnesota*, 552 U.S. 264, 266 (2008) ("New constitutional rules announced by this Court that place certain kinds of primary individual conduct beyond the power of the states to proscribe . . . must be applied in all future trials, all cases pending on direct review, and all federal habeas corpus proceedings."). Instead, the Court finds that the Supreme Court's holding in *Welch* that *Johnson* applies retroactively satisfies § 2255(f)(3) with respect to claims

brought under § 4B1.2(a)(2), which uses the same language and raises the same constitutional concerns at issue in *Johnson*. *See In re Encinias*, 821 F.3d 1224 (10th Cir. 2016) (finding it "reasonably likely" that *Johnson* applies retroactively under the sentencing guidelines).

That the Guidelines are advisory, and not statutory, does not alter this analysis. As the *Madrid* panel concluded:

> The Supreme Court has held that the Guidelines are subject to constitutional challenge 'notwithstanding the fact that sentencing courts possess discretion to deviate from the recommended sentencing range. Further, the Guidelines are the mandatory starting point for a sentencing determination; a district court can be reversed for failing to correctly apply them despite the ability to later deviate from the recommended range.

*Id.*; *see Monlina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016) ("The Guidelines central role in sentencing means that an error related to the Guidelines can be particularly serious.").

Accordingly, Mr. Trujillo's motion arises from a new right initially recognized in *Johnson* and held retroactive in *Welch*, and because his instant § 2255 motion was brought within one year of the *Johnson* decision, it is timely. *See* 28 U.S.C. § 2255(f)(3).

## B. PROCEDURAL DEFAULT

The Government next argues that Mr. Trujillo's § 2255 motion is procedurally barred because he never presented his current argument on direct appeal. The Court finds under the circumstances that the failure to take a direct appeal is no barrier to Mr. Trujillo's present motion.

10

As a general rule, a defendant cannot raise an argument on collateral review that was not raised on direct appeal. *See, e.g.*, *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 351 (2006). Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised on collateral review only if the defendant can demonstrate cause for failing to raise it and resulting prejudice. *Bousley v. United States*, 523 U.S. 614, 621 (1998).

The Court finds that Mr. Trujillo has demonstrated cause. Before *Johnson*, Mr. Trujillo's current argument would have failed, unless he had taken it all the way to the Supreme Court and convinced the Supreme Court to overrule *Sykes v. United States*, 564 U.S. 1 (2011), among other Supreme Court and Circuit cases. *Sykes*, 564 U.S. at 15, held that the residual clause "states an intelligible principle and provides guidance that allows a person to conform his or her conduct to the law," and *Johnson*, 135 S. Ct. at 2559, eventually overruled this conclusion. *See James v. United States*, 550 U.S. 193 (2007) (also overruled by *Johnson*).

In *Reed v. Ross*, 468 U.S. 1, 17 (1984), the Supreme Court held that when one of its decisions explicitly overrules one of its prior decisions,

> there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position that [the Supreme] Court had ultimately adopted. Consequently, the failure of a defendant's attorney to have pressed such a claim . . . is sufficiently excusable to satisfy the cause requirement.

Therefore, to preserve his current argument, Mr. Trujillo was not required to argue on direct appeal that Supreme Court precedent should be overruled, particularly precedent as recent as *Sykes*. See *United States v. Snead*, 2016 WL 4091548, at *2–3 (N.D. Cal.

Aug. 2, 2016); *United States v. Dean*, 169 F. Supp. 3d 1097, 1106–08, 2016 WL 1060229, at *5–12 (D. Or. Mar. 15, 2016).

The Government does not challenge that Mr. Trujillo has shown prejudice. Generally, to show prejudice, a petitioner must show that without an error, the conviction or sentence would have been different. *Strickler v. Greene*, 527 U.S. 263, 289 (1999). Here, the Court considered the Guidelines and enhanced Mr. Trujillo's guideline range based on the definition of a crime of violence in § 4B1.2(a). The application of that section increased Mr. Trujillo's base level imprisonment range from 77 and 96 months to 151 to 188 months imprisonment. Even though Mr. Trujillo's sentence of 120 months was a downward variance from the enhanced range of 151 to 188 months, it was still above the non-enhanced range of 77 to 96 months. The Court therefore finds that any constitutional error in calculating Mr. Trujillo's Guidelines range worked to his actual and substantial disadvantage, resulting in sufficient prejudice to overcome procedural default. *See Madrid*, 805 F.3d at 1211 (discussing the grave importance of the Guidelines and the serious problems that accompany a failure to apply them correctly); *Monlina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016) (same).

Accordingly, the Court concludes that Mr. Trujillo has shown cause and prejudice sufficient to overcome his failure to file a direct appeal challenging his sentence, and his instant § 2255 motion is not procedurally barred.

### C.  ON THE MERITS

The Court now addresses whether Mr. Trujillo's prior convictions for aggravated robbery qualify as crimes of violence under § 4B1.2(a) without the residual clause. If

the convictions are properly considered crimes of violence under the force clause as the Government contends, then Mr. Trujillo was properly sentenced without the residual clause and *Johnson* does not entitle him to relief.

The force clause defines a crime of violence as one that "has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 4B1.2(a)(1).  As used in the force clause, "physical force," means "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis omitted) (*Curtis Johnson*).  That force must be directed at another person—using force against property alone is not sufficient.  *Id.*  Mere unwanted touching is also not sufficient.  *Id.* at 143.

In determining whether a conviction qualifies as a crime of violence under the force clause, we employ a categorical approach that "looks to the words of the statute and judicial interpretations of it, rather than to the conduct of any particular defendant convicted of that crime."  *Wise*, 597 F.3d at 1144 (citation and internal quotation marks omitted).  This approach mandates that courts "look only to the statutory definitions— i.e., the elements—of a defendant's prior offense[ ] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a crime of violence.  *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013).  Because the court looks only to the statute of conviction rather than the facts of the crime, it "must presume that the conviction rested upon nothing more than the least of the acts criminalized."  *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (citation and internal quotation marks omitted).  If the most innocent conduct covered by the statute does not constitute a crime of violence, the offense does not qualify as a crime of violence.  *Id.*

13

Turning to this case, a person is guilty of robbery in Colorado if the state proves that the defendant knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation.  *See* Colo. Rev. Stat. § 18-4-301.[3] The state statute does not clearly require that the threatened force be physical, nor does it require that the amount of force be capable of causing pain or injury.  *See People v. Davis*, 935 P.2d 79 (Colo. App. 1996).  "Simple robbery . . . does not have 'as an element the use, attempted use, or threatened use of physical force against the person of another,' U.S.S.G. § 4B1.2(a)(1), because Colorado cases make clear that the amount of force necessary to commit simple robbery does not rise to the *Curtis Johnson* definition of "physical force."  *United States v. Durete*, No. 14-CR-071-WJM-1, 2016 WL 5791199, at *5 (D. Colo. Sept. 13, 2016); *People v. Davis*, 935 P.2d 79 (Colo. App. 1996).  Therefore, simple robbery under § 18-4-301 does not satisfy the force clause.

However, Mr. Trujillo pled guilty to aggravated robbery.  In Colorado, aggravated robbery is defined as follows:

> (1) A person who commits robbery is guilty of aggravated robbery if during the act of robbery or immediate flight therefrom:
>
> (a) He is armed with a deadly weapon with intent, if resisted, to kill, maim, or wound the person robbed or any other person; or

---

[3] That the Colorado statute includes the word "intimidation" does not put the statutory definition outside of the force clause.  Several Circuits have determined that intimidation is, by nature, the threatened use of physical force.  *United State v. Brown*, 437 F.3d 450, 452 (5th Cir. 2006); *United States v. Melton*, 344 F.3d 1021, 1025-26 (9th Cir. 2003); *United States v. Presley*, 52 F.3d 64, 69 (4th Cir. 1995).

(b) He knowingly wounds or strikes the person robbed or any other person with a deadly weapon or by the use of force, threats, or intimidation with a deadly weapon knowingly puts the person robbed or any other person in reasonable fear of death or bodily injury; or

(c) He has present a confederate, aiding or abetting the perpetration of the robbery, armed with a deadly weapon, with the intent, either on the part of the defendant or confederate, if resistance is offered, to kill, maim, or wound the person robbed or any other person, or by the use of force, threats, or intimidation puts the person robbed or any other person in reasonable fear of death or bodily injury; or

(d) He possesses any article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or represents verbally or otherwise that he is then and there so armed.

Colo. Rev. Stat. § 18-4-302(1).[4]

The "least of" of the subsections in this statute only require that the defendant be armed with a deadly weapon during the act of robbery (or was accompanied by an accomplice who did the same).  Colorado defines "deadly weapon" as any "weapon, device, instrument, material, or substance, whether animate or inanimate," "capable of

---

[4] This statute lists divisible, alternative elements that a jury might use to find a defendant guilty of aggravated robbery. *United States v. Nevels*, 490 F.3d 800, 807 (10th Cir. 2007).  Therefore, the Court typically engages in a modified categorical approach, which applies only where a state statute contains a divisible list of alternative elements.  *See Mathis v. United States*, 136 S.Ct. 2243, 2249 (2016).  Under this approach, the Court "looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy)," commonly known as "Shepherd documents," to determine under which divisible provision Mr. Trujillo was convicted.  *Id.*  If it can, the Court need only decide whether his particular convictions required, as an element, threat or use of force of physical injury.  *Id.*  If so, they are properly crimes of violence under the force clause of § 4B1.2(a).  However, here, the documents related to Mr. Trujillo's previous aggravated robbery convictions are not part of this Court's record, nor does the PSR specify under which subsection of the aggravated robbery statute Mr. Trujillo was charged and convicted.  Accordingly, the Court may find that Mr. Trujillo's previous convictions satisfy the force clause only if the least culpable means of committing aggravated robbery, regardless of which element is proven, necessarily requires use or threat of physical force.

15

producing death or serious bodily injury." Colo. Rev. Stat. § 18-1-901(e).  In addition,

bodily injury is defined to include mental impairment.  Colo. Rev. Stat. § 18-1-901(c).

Thus, in Colorado, a person could commit aggravated robbery by, for example,

threatening mental impairment while carrying, but not revealing or using, a gun.  Or, a

person could be convicted of aggravated robbery for grabbing a purse from someone's

hand (not employing the sort of violent force "capable of causing physical pain or injury,"

*Curtis Johnson*, 559 U.S. at 140), while merely possessing a deadly weapon but not

brandishing or using it.  Stated more broadly, a person could be convicted of

aggravated robbery by committing simple robbery (which the Court has already

determined does not constitute a crime of violence under the force clause), while

carrying, but not using, threatening to use, or intimidating the victim with, a deadly

weapon.  Because the act of carrying a deadly weapon while committing robbery does

not constitute violent physical force, it would not constitute a crime of violence under the

force clause in § 4B1.2(a).  *See id*.

That the presence of a deadly weapon may increase the *likelihood* that a robber

will seriously injure the victim or a third party does not place aggravated robbery within

the reach of the force clause.  *Johnson* requires the Court to examine the nature of the

force that must be actually employed or threatened to sustain a conviction, not the

potential risk of injury.  In other words, to find that a robbery committed by a defendant

who is simply armed with a deadly weapon—but does not display, use, or threaten to

use it—constitutes a "crime of violence" simply because of an elevated *likelihood* of

injury employs the risk-centric inquiry that the Supreme Court expressly rejected in

*Johnson*, 135 S.Ct. at 2557.

16

The Court therefore concludes that Mr. Trujillo's prior aggravated robbery convictions are not crimes of violence under the force clause of § 4B1.2(a)(1) of the Guidelines.  The Court also finds that aggravated robbery is not enumerated in § 4B1.2(a)(2).[5]  Thus, the only basis in § 4B1.2(a) for declaring aggravated robbery to be a crime of violence is the residual clause in § 4B1.2(a)(2), which is no longer valid.

Because Mr. Trujillo's aggravated robbery convictions no longer constitute crimes of violence under §4B1.2(a), his base offense level should not have been enhanced on that account and he must be resentenced.

## III.   MR. TRUJILLO'S SENTENCE

The PSR in this case, which the Court adopted at the sentencing hearing, reflects a criminal history category of VI and a total offense level of 29.  Mr. Trujillo was therefore subject to an imprisonment range between 151 and 188 months.  Under 18 U.S.C. § 3553, the Court departed from the Guidelines and lowered Mr. Trujillo's sentence to 120 months.  Without the career offender enhancement in §4B1.2(a), Mr. Trujillo's total offense level would have been 21, resulting in an imprisonment range between 77 and 96 months.  The record reflects that Mr. Trujillo has been in custody since April 2009 (Doc. # 4), and Mr. Trujillo has therefore served nearly 91 months in prison.

---

[5] The Court is aware that the enumerated crimes listed in § 4B1.2(a)(2) have been amended to include robbery, but again Guidelines ranges are calculated according to the Guidelines in effect at the time the defendant is sentenced.  *See* U.S.S.G. § 1B1.11.  In addition, the Court recognizes that "robbery" is an enumerated offense in § 4B1.2's Application Note 1, but the enumerated offenses in the Application Note are best seen as grounded in the residual clause, which is now invalid. That portion of the Application Note is therefore itself invalid. *See, e.g.,* *United States v. Durete,* No. 14-CR-071-WJM-1, 2016 WL 5791199, at *6–7 (D. Colo. Sept. 13, 2016).

## IV.   <u>CONCLUSION</u>

In conclusion, the Government's procedural arguments fail, and under the circumstances of this case, aggravated robbery in Colorado is no longer considered a crime of violence after *Johnson*.   Accordingly, the Court GRANTS Mr. Trujillo's Motion to Vacate under 28 U.S.C. § 2255 (Doc. # 28) and VACATES the Judgment dated October 14, 2009 (Doc. # 26).   It is

FURTHER ORDERED that a resentencing hearing is scheduled for Tuesday, January 31, 2017, at 11:00 a.m. in Courtroom A602, Alfred A. Arraj Courthouse, 901 19th Street, Denver, Colorado.

DATED:  December 1, 2016                              BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge